IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

RANDY HELTON,                                    :
                                                 :
             Plaintiff,                          :
                                                 :
                                                 :
VS.                                              :         **1 : 11-CV-134 (WLS)**
                                                 :
Warden JOSEPH BADEN,                             :
CHRISTOPHER RAILEY,                              :
CHRISTINE CROSS, and                             :
FREDERICK GAMMAGE,                               :
                                                 :
             Defendants.                         :
_____

## ORDER AND RECOMMENDATION

Presently pending in this action brought pursuant to 42 U.S.C. ▪ 1983 are a Motion for

Summary Judgment filed on behalf of the Defendants, and Plaintiff's motions for injunctive relief,

to appoint counsel, and seeking relief on an affidavit.   (Docs. 28, 23, 37, 41).   The Plaintiff filed

this action in September 2011, raising allegations regarding his confinement at Calhoun State

Prison.   (Doc. 1).   Ultimately, only Plaintiff's claims of retaliation against the above-named

Defendants were allowed to proceed.   (Docs. 6, 36).   The undersigned notified the Plaintiff of the

filing of the Defendants' summary judgment motion, advised him of his obligations under the law,

and directed him to respond thereto within thirty (30) days of his receipt of the Court's Order.

(Doc. 29).   Plaintiff filed a one-page, unsigned, presumed response to Defendants' Motion.

(Doc. 32).

### *Background*

Plaintiff brings this action against Joseph Baden, former Warden of Calhoun State Prison,

Deputy Warden Christopher Railey, Deputy Warden Christine Cross, and Unit Manager Frederick

Gammage.   Plaintiff asserts that he was moved to another cell by Defendant Gammage in August 2011, putting Plaintiff at risk of harm from his new cellmate, and was later denied protective custody, all in retaliation for Plaintiff's previous lawsuit against a correctional officer.   Plaintiff filed suit against Correctional Officer Burks and others in June 2011 in this Court, raising in part allegations of excessive force by Officer Burks.   *See Helton v. Burks, et al.,* Civil Action No. 1 : 11-CV-77-WLS (M.D.Ga.).

## *Motion for Summary Judgment*

### *Standard of review*

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed.R.Civ.P. 56(c)(1).

As the party moving for summary judgment, the defendant has the initial burden to demonstrate that no genuine issue of material fact remains in this case.   *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986); *Clark v. Coats & Clark, Inc.,* 929 F.2d 604 (11th Cir. 1991).   The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record, including pleadings, discovery materials, and

affidavits, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323.   "If a party fails to properly support an assertion of fact or fails to properly address another party=s assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials B including the facts considered undisputed B show that the movant is entitled to it@   Fed.R.Civ.P. 56(e)(3).   The Defendants have supported their Motion for Summary Judgment with their affidavits, as well as the affidavits of correctional officers Travis Wright, Willington Kegler, and Timothy Davis, and the deposition testimony of the Plaintiff.   (Docs. 28-3 – 28-11).

## *Discussion*

It is well established that discipline imposed in retaliation for a prisoner=s exercise of a constitutionally protected right is actionable.   *Wildberger v. Bracknell*, 869 F.2d 1467, 1468 (11th Cir. 1989).   Allegations that prison officials=actions were taken in retaliation for the filing of lawsuits or administrative grievances "bring[s] [such] actions that might not otherwise be offensive to the Constitution . . . within the scope of the Constitution . . . This type of retaliation violates both the inmate=s right of access to the courts and the inmate=s First Amendment rights.@ *Wright v. Newsome*, 795 F.2d 964, 968 (11th Cir. 1986).   However, a plaintiff bringing a retaliation claim must provide more than conclusory allegations of the defendant=s retaliatory motive in order to survive the defendant=s properly supported summary judgment motion. *McCain v. Scott*, 9 F.Supp.2d 1365, 1370 (N.D.Ga. 1998).

In order to establish his claim of retaliation, the Plaintiff must show that he was engaged in protected conduct, which conduct was a substantial or motivating factor in the retaliatory action. *Mt. Healthy City School Dist. v. Doyle*, 429 U.S. 274, 287 (1977).   "The inmate must produce direct evidence of motivation or, the more probable scenario, >allege a chronology of events from

3

which retaliation may plausibly be inferred." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995) (quoting *Cain v. Lane*, 857 F.2d 1139, 1143 n.6 (7th Cir. 1988)).   "The causal connection [or motivation] inquiry asks whether the defendants were subjectively motivated to discipline because [the inmate] complained of some conditions of his confinement."   *Smith v. Mosley*, 532 F.3d 1270, 1278 (11th Cir. 2008).   If Plaintiff establishes that his protected conduct was a motivating factor behind the harm inflicted, the burden of production shifts to the Defendants to show that they would have taken the same action in the absence of the protected activity.   *Mt. Healthy*, 429 U.S. at 287; *Smith*, 532 F.3d at 1278.

The Defendants do not contest the fact that Plaintiff's lawsuit against Correctional Officer Burks qualifies as protected conduct.   (Doc. 28-2, p. 12).   However, the Defendants do contend that Plaintiff has failed to establish a causal connection between the filing of the Burks lawsuit and Plaintiff's cell transfer and denial of protective custody.

In the affidavits supporting their Motion for Summary Judgment, the Defendants establish that although Plaintiff was moved to another cell at Calhoun State Prison on August 19, 2011, the move, authorized by Shift Supervisor Travis Wright and ordered by Defendant Gammage, was effectuated for security reasons to separate the Plaintiff and his former cellmate.   (Doc. 28-3, ¶¶ 19-23; Doc. 28-8, ¶¶ 8, 9).   Prison officials had determined that Plaintiff and his former cellmate had become too close, not wanting to move from one another, and posed a possible threat to the prison's security.   *Id.*   Moreover, the Defendants establish that at the time of Plaintiff's cell change, none of the Defendants were aware of Plaintiff having filed a lawsuit against Correctional Officer Burks, although Defendants were aware of the alleged situation underlying the lawsuit. (Doc. 28-3, ¶ 17; Doc. 28-5, ¶ 17; Doc. 28-6, ¶ 15; Doc. 28-7, ¶ 17).   Defendants Baden, Railey and Cross were not involved in the alleged denial of protective custody to the Plaintiff, which

4

requires a written request by the inmate and a review of same by prison authorities. (Doc. 28-5, ¶¶ 8-11; Doc. 28-6, ¶¶ 5, 11; Doc. 28-7, ¶¶ 5, 11).

In regard to Defendant Gammage's refusal of Plaintiff's protective custody requests, Defendant Gammage testifies in his affidavit that, as Unit Manager, he had sole discretion regarding inmate requests for protective custody. (Doc. 28-3, ¶ 5). Inmates' requests for protective custody were required to be made in writing, and were investigated by CERT members. *Id.* at ¶¶ 8-10. Gammage testifies that although Plaintiff made requests for protective custody, Plaintiff failed to provide enough specific information in regard to the nature of perceived threats or the names of inmates who he feared, and his requests were denied. *Id.* at ¶ 12. Gammage testifies that he did not deny Plaintiff protective custody as a means of retaliation, and further, that he had no knowledge of any risk to Plaintiff posed by his new cellmate. *Id.* at ¶¶ 25, 26.

Gammage further testifies that he was responsible for ordering Plaintiff's cell transfer in August 2011, although he has no specific memory of the reasons underlying Plaintiff's cell transfer in August 2011. (Doc. 28-3, ¶¶ 16, 23) Records including the Offender Movement Detail pertaining to the move indicate to Gammage, however, that said move was motivated by prison officials' belief that Plaintiff and his cellmate had become too attached to one another and had refused to move from one another. *Id.* at ¶¶ 19-23. At the time of Plaintiff's cell transfer in August 2011, Gammage was not aware of the lawsuit filed by Plaintiff against Officer Burks in June 2011. *Id.* at ¶ 17.

In his deposition testimony, the Plaintiff testifies without further detail or support that Defendant Gammage had Plaintiff moved in retaliation for Plaintiff's lawsuit against Officer Burks. (Doc. 28-11, p. 49, ll. 19-24). Plaintiff concludes that because the cell move occurred after the filing of Plaintiff's lawsuit against Officer Burks in June 2011, the motivating reason for

5

the cell move was to retaliate for Plaintiff's filing of the lawsuit.   *Id.*   Although Plaintiff asserts that Defendant Gammage saw Plaintiff working on his lawsuit with his cellmate prior to the cell transfer, Plaintiff has failed to rebut the Defendants' showing that Defendant Gammage's view into the cell was blocked by the solid cell door with only a small window opening, as well as the placement of the desk that restricted the view.   (Doc. 28-3, ¶ 18; Doc. 28-4, Att. 3).   Plaintiff does not refute Defendant Gammage's affidavit testimony that he could not have seen what inmates were working on simply by looking through the window on the cell door, as alleged by the Plaintiff.   (Doc. 28-3, ¶ 18; Doc. 28-11, p. 52, ll. 5-14, p. 60, ll. 3-19).

The Plaintiff herein has failed to effectively refute the Defendants= summary judgment showing and the contentions therein, evidencing that the Plaintiff was moved to another cell due to a perceived security threat resulting from the relationship between Plaintiff and his former cellmate.   Documents filed in support of the Defendants' summary judgment motion evidence disciplinary action taken against the Plaintiff and his former cellmate based on their refusals to move into general population prior to the August 2011 cell transfer.   (Doc. 28-4, Att. 4, 5).   Courts have recognized that in the situation of transfers, prison officials must be accorded a certain amount of deference, and that A[t]he ability to transfer a prisoner who is interfering with prison administration and staff morale goes to the essence of prison management.@   *Ward v. Dyke*, 58 F.3d 271, 274 (6th Cir. 1995); *see also Osterback v. Kemp*, 300 F. Supp. 2d 1238 (N.D.Fl. 2003) (defendant prison officials showed that they had a legitimate reason for transferring prisoner to another facility, separate and apart from any motive to retaliate, and plaintiff=s retaliation claim therefor failed).

Although the Plaintiff asserts at one point that he was told by correctional officers that the cell move was based on Plaintiff's lawsuit against Officer Burks, the affidavit testimony of the

officers who allegedly moved Plaintiff do not support this statement.   (Doc. 28-11, p. 53, l. 16 – p. 54, l. 18; Doc. 28-9, ¶ 8; Doc. 28-10, ¶ 7).   Plaintiff's own deposition testimony provides conflicting statements in this regard.   *See* Doc. 28-11, p. 54, ll. 14-18, p. 89, ll. 14-21.

Moreover, Plaintiff has failed to refute the Defendants' showing that none of the Defendants were aware of Plaintiff's lawsuit against a correctional officer at the time of his cell transfer, and that Plaintiff was denied Protective Custody status prior to and after the filing of the lawsuit against Officer Burks based on insufficient information provided by Plaintiff.   Plaintiff does not provide any additional detail or reasons for seeking protective custody in his deposition testimony, beyond his racial tattoos and fears of certain prison gangs and officers.   (Doc. 28-11, pp. 67-68).

The Plaintiff has failed to provide the Court with any evidence beyond his conclusory allegations of retaliation.   Although a plaintiff bringing a claim based on an official's improper motive need not adduce clear and convincing evidence of said motive to defeat a summary judgment motion, the plaintiff "must identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive."   *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998).   This the Plaintiff has failed to do.   The Plaintiff offers no additional support of his claims or in opposition to the Defendants' summary judgment motion and fails to rebut the Defendants' summary judgment showing.

Additionally, the Plaintiff appears to attempt to hold Defendants Baden, Railey, and Cross liable based on a theory of vicarious liability, as Plaintiff does not allege these Defendants' direct or personal involvement in the alleged offenses underlying this lawsuit.   To state a supervisory claim, a plaintiff must show the existence of a causal connection between the actions of the supervisor and the alleged constitutional deprivation by establishing: 1) a history of widespread abuse which put the supervisor on notice of the need to correct the alleged deprivation which he

failed to correct, or 2) that the supervisor had a custom or policy that resulted in deliberate indifference to constitutional rights, or 3) facts which support an inference that the supervisor directed other defendants to act unlawfully or knew that other defendants would act unlawfully, and failed to stop them from doing so.   *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003).

"Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation. . . . The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so".   *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990) (internal citations omitted).

Plaintiff has not demonstrated Defendants Baden, Railey, or Cross' personal participation in the events underlying this lawsuit, nor has he demonstrated a causal connection between the events and these Defendants' customs or policies.   These three Defendants did not have personal knowledge of Plaintiff's lawsuit against fellow correctional officer Burks and had no involvement in the Plaintiff's cell transfer or denial of protective custody.

Based on the Plaintiff's failure to establish more than conclusory allegations of retaliation, and based on his failure to establish the supervisory liability of Defendants Baden, Railey or Cross, it is the recommendation of the undersigned that the Defendants=Motion for Summary Judgment be **GRANTED**.

## *Motion for injunctive relief*

In a motion seeking injunctive relief filed on April 27, 2012, the Plaintiff appears to request the scheduling of a deposition for an unidentified party and the appointment of counsel.   (Doc. 23).   Inasmuch as neither discovery nor the appointment of counsel are appropriate subjects of a

8

motion for injunctive relief, it is the recommendation of the undersigned that Plaintiff's Motion for Injunctive Relief be **DENIED**.

Pursuant to 28 U.S.C. ▪ 636(b)(1), the parties may file written objections to these recommendations with the Honorable W. Louis Sands, United States District Judge, WITHIN FOURTEEN (14) DAYS after being served with a copy of these recommendations.

### *Motion for appointment of counsel*

Plaintiff has petitioned this Court to appoint legal counsel to represent him in this proceeding.   (Doc. 37).   Generally speaking, no right to counsel exists in §1983 actions.   *Wahl v. McIver*, 773 F.2d 1169, 1174 (11th Cir. 1985); *Hardwick v. Ault*, 517 F.2d 295, 298 (5th Cir. 1975); *Mekdeci v. Merrel Nat'l. Lab.*, 711 F.2d 1510, 1522 n.19 (11th Cir. 1983).   Appointment of counsel is a privilege that is justified only by exceptional circumstances.   *Lopez v. Reyes*, 692 F.2d 15, 17 (5th Cir. 1982); *Branch v. Cole*, 686 F.2d 264, 266 (5th Cir. 1982); *Ulmer v. Chancellor*, 691 F.2d 209 (5th Cir. 1982).

In deciding whether legal counsel should be provided, the Court typically considers, among other factors, the merits of the Plaintiff's claim and the complexity of the issues presented. *See Holt v. Ford*, 862 F.2d 850, 853 (11th Cir. 1989).   Applying the standards set forth in *Holt*, it appears that at the present time, the essential facts and legal doctrines in this case are ascertainable by the Plaintiff without the assistance of court-appointed legal counsel and that the existence of exceptional circumstances has not been shown by the Plaintiff.   The Court on its own motion will consider assisting Plaintiff in securing legal counsel if and when it becomes apparent that legal assistance is required.   Accordingly, Plaintiff's Motion for Appointment of Counsel is **DENIED.**

*Motion regarding affidavit of Marie Taylor*

Apparently in response to the Defendants' filing of the affidavit of Marie Taylor (Docs. 39, 40), the Plaintiff filed a motion in which he states that he is not receiving his legal mail.   (Doc. 41).   Plaintiff does not ask the Court for specific relief, but appears to seek Court intervention and correction of the perceived problems in the prison mail system.   By means of the affidavits of prison employees Marie Taylor and Sanche Jackson, and exhibits attached thereto, the Defendants have shown that Plaintiff's legal mail is being processed and forwarded according to standard mailroom procedures within the Georgia Department of Corrections.   (Docs. 39-1, 42-1). Accordingly, to the extent that the Plaintiff seeks Court intervention in his Motion, Plaintiff has failed to establish a sufficient basis for the granting of any relief in this regard.   Plaintiff's Motion is therefore **DENIED**.

**SO ORDERED and RECOMMENDED**, this 9th day of January, 2013.


s/   ***THOMAS Q. LANGSTAFF***
UNITED STATES MAGISTRATE JUDGE